UNITED STATES of America, Plaintiff,

v.

Duane TIRADO, Defendant.

No. 4:95 CR 338.

United States District Court,
N.D. Ohio,
Eastern Division.

Dec. 7, 1995.

Gary D. Arbeznik, Asst. U.S. Attorney, Cleveland, OH, for plaintiff.

Debra Migdal, Federal Public Defender, Cleveland, OH, for defendant.

## MEMORANDUM OF OPINION AND ORDER (AMENDED)

NUGENT, District Judge.

This case is before the Court upon the motion titled "Motion For Reconsideration of Bond Conditions" filed by the Defendant, Mr. Duane Tirado on November 22, 1995 (Doc. # 18). The transcript of the bond hearing held on November 21, 1995, was filed on November 28, 1995, and the United States Attorney filed a brief in opposition on December 1, 1995.

There are three (3) transcripts of proceedings in this case that are part of the record and are relevant to the issues before the Court. They are: first, bond hearing before Magistrate Judge James D. Thomas on October 13, 1995; second, transcript of the ar-

raignment hearing before this Court on November 1, 1995; and third, transcript of the bond hearing before this Court on November 21, 1995.

## STATEMENT OF THE FACTS

A one count indictment was returned by the Grand Jury on September 28, 1995, charging Mr. Tirado with with a violation of Title 18, Section 922(g) and 924(a)(2), United States Code.

This Court scheduled the arraignment for October 4, 1995, and notified Mr. Tirado as well as the Pretrial Service Officer of the Court. On October 4, this case was called for arraignment and Mr. Tirado did not appear. Therefore, a warrant was issued for his arrest. On October 13, 1995, Mr. Tirado was arrested at his place of employment and brought before Magistrate Judge James D. Thomas for the setting of bond. Based upon the Pretrial Services Report, Magistrate Judge James D. Thomas set an unsecured $5,000 bond.

On October 30, 1995, Mr. Tirado again failed to appear for arraignment. Mr. Tirado's counsel determined that notice of this arraignment had been sent to his original counsel and asked the Court for an opportunity to contact the Defendant. As a result, this Court did not issue another arrest warrant, rather Mr. Tirado was contacted by his new counsel and the Court rescheduled the arraignment for November 1, 1995. The arraignment then took place before this Court on November 1, 1995. At this hearing, the Court learned that Mr. Tirado had received notice of the October 4 arraignment date and had intentionally declined to appear as required. In addition to ignoring his obligation to appear at the previously scheduled arraignment, he failed to contact the Court or counsel in his pending D.U.I. case concerning his whereabouts. Thus, this Court had been required to issue a warrant for Mr. Tirado's arrest, and the government was required to assign several agents to track him down, with full knowledge of his vicious and violent background. He was arrested without incident on October 13, 1995, at his place of employment.

Bond was set at $15,000, ten (10) percent at the arraignment on November 1. This bond order was appealed by Mr. Tirado. The Sixth Circuit Court of Appeals affirmed this Court's decision and dismissed the appeal. On November 17, 1995, Mr. Tirado filed a Request for a Detention Hearing and the hearing was conducted on November 21, 1995, to reconsider the issue of bond. Mr. Tirado called Mr. David Shoeck, the author of the Pretrial Services Report and Recommendation, and Mr. Tirado's friend, Mr. Matthew Tubbs.

Mr. Shoeck admitted he prepared his report in this case without ever having talked to Mr. Tirado and that he had no financial information concerning Mr. Tirado after 1980. That inadequate information had been supplemented by the time Mr. Shoeck testified on behalf of Mr. Tirado.

On pages 44 and 45 of the November 21 hearing, Mr. Shoeck had a more informative opinion and recommendation on bond.

Direct/Ms. Migdal:

Q. "Based on the information you obtained from Mr. Tirado and your information to date, would that change your recommendation as an appropriate bond?"

A. "I cannot say that because I am privy to other information that I heard about Mr. Tirado that would change what I know now from what I knew then. I didn't know that he knew about what was already been stated, that he already knew about the initial hearing and just didn't come. I didn't know that. That's something that I would have taken into factor if I would have known that."

Q. "Fair enough. But in light of the fact that you now have that information, but also considering his performance on pretrial supervision, what would your recommendation be?"

A. "Based on what I know now? Based on I know that he failed to appear voluntarily to the Court?"

Q. "Yes"

A. "Still recommend pretrial supervision but I would probably put a minimal cash bond in as compared to an unsecured bond, to be honest with you."

Q. "What amount would you have recommended? Do you have any information regarding Mr. Tirado's finances?"

A. "Just his work, his employment. Because we went over that because it was a requirement with regard to bond set by Magistrate Judge Thomas on October 13. I wanted to know where he was working, where he was living. And so I would probably go $5,000 or $10,000, ten percent bond."

Ms. Migdal: "Thank you."

Mr. Tubbs added additional testimony that Mr. Tirado works for him making at least $75–$100 per week and is paid in cash. Mr. Tubbs also testified he would be willing to co-sign a bond for Mr. Tirado but would not be able to come up with the necessary cash in the event of forfeiture.

As to Mr. Tirado's financial condition at the hearing before Magistrate Judge Thomas, he testified that he has been employed at the same location over 21 years since high school, apparently only interrupted by his lengthy periods of incarceration. The evidence also demonstrated that Mr. Tirado's only fixed expense was $100 per month rent to his uncle and no one is dependent upon him for support. No other evidence of any substance was presented as to Mr. Tirado's finances other than the fact that he owned an automobile.

The government called one witness, Special Agent Jay R. Gebhart of ATF. He testified about the strength of the government's case and other information about the circumstances of Mr. Tirado's arrest.

At the end of the hearing, the Court requested counsel for Mr. Tirado brief the issue of what financial condition of bond or other conditions would reasonably assure the appearance of Mr. Tirado and would ensure the safety of the community. The government was given the opportunity to file a responsive brief. Counsel for Mr. Tirado filed a two page brief titled "Motion For Reconsideration of Bond Conditions" on November 22, and the government filed its response on December 1.

■ The Court has determined that pretrial release of Mr. Tirado upon personal recognizance, or upon execution of an unsecured appearance bond, will not reasonably assure the appearance of Mr. Tirado as required and such release will endanger the safety of the community. A review of Mr. Tirado's background, including his intentional refusal to appear at his arraignment in this case, his prior history of having failed to appear in court in another case, as well as the entire record thus far presented in this case, demonstrate that pretrial release pursuant to § 3142(b) is not warranted.

Therefore the issue before the Court on Mr. Tirado's Motion For Reconsideration of Bond Conditions is whether the evidence supports Mr. Tirado's pretrial release pursuant to § 3142(c) or, if not, whether the Court should proceed with a detention hearing pursuant to § 3142(f).

■ In making this evaluation, the Court must take into account all of the relevant evidence offered and received up to this point. Additionally, the Court is required to weigh the factors listed in § 3142(g), being mindful of § 3142(c)(2) which states: "the judicial officer may not impose a financial condition that results in the pretrial detention of the person."

Here, Mr. Tirado has alleged that the $15,000, Ten (10) percent bond is in violation of § 3142(c)(2) since Mr. Tirado has not posted the bond. This Court must therefore determine whether a financial or monetary condition is necessary to assure Mr. Tirado's appearance and will minimize the risk he presents to the safety of the community.

The only credible evidence on the issue of bond, offered by Mr. Tirado at the hearing was by Mr. Shoeck who testified that Mr. Tirado could and should be required to post a ten (10) percent bond set at $5,000 or $10,000. Therefore, the evidence before the Court, offered by Mr. Tirado, is that he is able to post such a bond with the required financial conditions; and, if such bond was set by this Court, it would not only reasonably assure the appearance of Mr. Tirado at future court hearings, but would not endanger the safety of any other person or the community.

## LAW

The release or detention of a defendant pending trial is governed by the "carefully structured system" of 18 U.S.C. § 3142. *United States v. Wong–Alvarez,* 779 F.2d 583 (11th Cir.1985). Two subsections of that statute pertain to the instant case. Subsection (c) is titled "Release on conditions." Subsection (c) provides in pertinent part: If the Judicial Officer finds that the defendant's release on his own recognizance or unsecured appearance bond will not reasonable assure defendant's appearance at trial or will endanger the safety of the community, the Judicial Officer may order the defendant's release subject to one or more conditions from a list of 14 provided. 18 U.S.C. § 3142(c).

If on the other hand the Judicial Officer finds that no condition or combination of conditions will reasonably assure the appearance of the person and/or the safety of the community, the defendant may be detained without bail. 18 U.S.C. § 3142(e). A condition precedent to detention without bail under subsection (e) is that a hearing be held as provided in subsection (f). Subsection (f) requires a hearing be held immediately upon the defendant's first appearance before a judicial officer. The defendant has the opportunity to present and cross-examine witnesses. Under subsection (e), a presumption arises that no condition of release will reasonably assure the safety of the public.

As stated, this Court set bail for Mr. Tirado at $15,000, ten (10) percent, pursuant to subsection (c). Mr. Tirado argues that he cannot afford to make this bond; specifically, he argues that the ten percent (10%) condition imposed, requiring him to pay $1500 in order to be released, is beyond his ability to pay. Mr. Tirado relies on the sentence of 18 U.S.C. § 3142(c)(2) which provides "the judicial officer may not impose a financial condition that results in pretrial detention of the person." Accordingly, Mr. Tirado contends that subsection (c) entitles him to bail set at an amount he can afford to pay.

■ Courts when confronted with setting the conditions of bond look at two considerations: reasonable assurance of the appearance of the defendant and the safety of other persons and the community in general. To assure the appearance of the defendant, Courts look at the financial condition as one requirement. *U.S. v. McConnell,* 842 F.2d 105 (5th Cir.1988).

■ Further, A financial condition may be both necessary and reasonable to assure the appearance of the defendant. *U.S. v. Lemos,* 876 F.Supp. 58 (D.N.J.1995). To serve its intended purpose bail must be proportionate to the Defendants liability. Where there is a potential for substantial time in prison, the financial security must be correspondingly substantial. The Court, *In Lemos,* provided:

"... The Court also finds that the other, non-monetary conditions of release in section 3142(c) are also not adequate. Where charges are serious and a Defendant may face a lifetime in prison, the requirement of financial security has a unique property. It provides something of real value to the defendant that government can control in lieu of release urged by the defendant, such as house arrest, random phone checks and the like, do not provide this type of concrete assurance that defendant will not run." *Id.* page 63

■ When a judge is faced with a risk of flight, that judge can set bail at a level that he finds reasonably necessary. *United States v. Jessup,* 757 F.2d 378 (1st Cir.1985). The court in *Jessup* also said that when a defendant informs the court that the bail exceeds his means, the court may nonetheless insist on the financial condition if the judge finds such bail is reasonably necessary to ensure the defendant's presence at trial.

■ Moreover, where the amount of bail is reasonable, it cannot be said that the financial condition is the "sub rosa detention order" that concerned Congress. S.Rep. 98–225, U.S.Code Cong. & Admin.News 1984, p. 3182. *U.S. v. Lemos,* 876 F.Supp. 58 (D.N.J. 1995). Further, in *United States v. Mantecon–Zayas,* 949 F.2d 548 (1st Cir.1991), the court provided:

"If a District Court enters an order for pretrial release containing a financial condition that the defendant *in good faith* cannot fulfill, when the defendant makes known to the court that the stipulated

condition is unattainable, then the court must explain its reason for determining that the particular requirement is an indispensable component." *Id.* pg. 551. (Emphasis added).

In the present case Mr. Tirado has requested a reconsideration the financial condition of his bond. The Court held a hearing on November 21, 1995. Based upon the testimony and the briefs that were submitted, this Court makes the following findings of fact:

(1) Mr. Tirado knowingly failed to appear for his arraignment scheduled on October 4, 1995;

(2) Mr. Tirado works as a mechanic and is paid at least, $75–$100 cash per week and has been employed at the same location for almost 21 years, except when he was incarcerated in jail;

(3) Mr. Tirado was arrested at work after the Court issued a warrant for his arrest;

(4) Mr. Tirado lives at his uncle's house and pays monthly rent;

(5) Mr. Tirado has a history of non-appearance since a capias was issued for his arrest in a previously pending case in 1978;

(6) Pretrial Service Officer, David Schoeck was called as a witness by Defendant Tirado;

(7) Pretrial Service Officer, David Schoeck, had no financial information about Mr. Tirado subsequent to 1980 when he wrote his original report and made his initial recommendation for a $5,000 unsecured bond;

(8) Pretrial Service Officer, David Schoeck, prepared a Pretrial Service report that recommended a $5,000 signature bond. Although he had not interviewed Mr. Tirado and Mr. Schoeck did not know if Mr. Tirado owned any property, whether he had a job, or whether he had a bank account or any other financial assets;

(9) Mr. Tirado's criminal record indicates he has a history of violence, including convictions and imprisonment for voluntary manslaughter, felonious assault, and assault;

(10) At the hearing on November 21, 1995, Pretrial Service Officer, David Schoeck, who prepared the Pretrial Service Report, after hearing the evidence, was asked By Mr. Tirado's counsel if he would change his recommendation as to an appropriate bond. Mr. Shoeck's response, based upon the information he has learned about Mr. Tirado, recommended a $5,000 or $10,000, ten percent bond.

(11) Mr. Tubbs, a friend of Mr. Tirado, would co-sign a $5,000 or $15,000 unsecured bond, but would *not* pay if the bond was forfeited;

(12) Mr. Tubbs stated while under oath that he was not on any form of assistance or welfare, which was later pointed out to this Court that the Welfare Department in Youngstown reflects that a check is mailed to a person with the same name, date of birth, and social security number as Mr. Tubbs every month;

(13) Mr. Tirado has sufficient monetary resources to post an amount of cash as a financial condition of bond in a reasonable amount; and,

(14) A financial condition is required to reasonably assure the appearance of Mr. Tirado and to ensure the safety of the community.

The Court, pursuant to Title 18, Section 3142(g), must consider a list of factors in setting a bond which will reasonably assure the appearance of the defendant and the safety of the community. Section 3142(g) provides in pertinent:

The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person.

The Court upon reviewing these factors as they apply to Mr. Tirado, considered the

following: First, as to the nature of the offense charged, Mr. Tirado, a man with a long history of violence, is charged with the receipt and possession of a stolen, loaded .32 caliber revolver with the serial number obliterated. Also, a knife was found in his pocket. Upon conviction, the guidelines appear to require imposition of a multi-year sentence between 46 and 57 months. Second, the weight of the evidence against the accused. Not only was Mr. Tirado arrested by the police while driving an automobile while in possession of a loaded firearm, but he also was under the influence of alcohol resulting in a breathalyzer test result of .28, almost three times the presumptive limit of driving while under the influence of alcohol. In addition, Mr. Tirado signed a two separate written statements at different times and to separate government agents admitting his guilt and acknowledging his full responsibility. Third, the history and characteristics of the person, including his character, employment, financial resources, family ties, history of alcohol abuse, criminal history and record concerning appearing at court appearances must be considered. Mr. Tirado served a multi-year sentences for his convictions for voluntary manslaughter, and for felonious assault in which a shotgun was used to kill the victim of the manslaughter and a firearm was also used in the felonious assault. Then in 1993 he was convicted of assault. In 1995 he was arrested in this case under all of the conditions previously discussed. According to the testimony of Mr. Tirado before Magistrate Judge Thomas, Mr. Tirado has regular employment as "auto-mechanic," he pays $100 a month rent to his uncle and he has no other financial obligations.

**CONCLUSION**

 Based on these facts, the Court finds that Mr. Tirado's proposal of a $5,000 or $15,000 unsecured bond is patently insufficient. The Court also finds that the other non-monetary conditions of release listed in section 3142(c) are also not adequate. Where charges are serious and Mr. Tirado may face substantial amount of time in prison, the requirement of financial security has a unique property. It provides something of real value to Mr. Tirado that the government can control in lieu of Mr. Tirado's person.

The other conditions of release urged by Mr. Tirado's counsel do not provide this type of concrete assurance that Mr. Tirado will appear as required at future hearings. A financial condition will also provide strong incentive for Mr. Tirado not to flee in the face of the potential sentence he is facing. An unsecured bond in light of all of the facts and circumstances of this case simply will not reasonably assure Mr. Tirado's appearance as required nor will it minimize the risk he presents to the safety of the community.

This Court has articulated in this Order the reasons that such financial condition is both a reasonable and an indispensable component of the conditions for release.

The evidence of the financial condition of Mr. Tirado indicates he will be able to post a reasonable financial condition of bond. In light of the foregoing, the Court finds that Mr. Tirado can afford the $10,000, ten (10) percent bond that was recommended by Mr. Tirado's own witness, Pretrial Service Officer, David Schoeck. This bond is both a reasonable and necessary condition of release. To serve its intended purpose, bail must be proportionate to the defendants liability. Where there is a potential for substantial time in prison, the financial security must be correspondingly substantial. The Court finds that the amount originally set of $15,000, ten (10) percent was low in comparison to that imposed in other cases. However, based upon the testimony and the briefs of the parties, Mr. Tirado's Motion For Reconsideration of Bond Conditions is **GRANTED.**

New bond set at 10,000, ten (10) percent. The monetary conditions having been modified, all other conditions of the bond set at the arraignment on November 1, 1995, remain the same. Trial remains December 11, 1995, at 9:00 a.m.

In the event Mr. Tirado, in *good faith,* believes that this order for pretrial release which includes the financial condition of a $10,000.00. 10% bond, is such a financial condition that he cannot fulfill, then in such event, the Defendant is required to file the appropriate motion for reconsideration of bond conditions with supporting evidentiary

material to demonstrate such *good faith* inability to fulfill the financial condition. The financial condition set in this Order follows not only all of the evidence thus far presented and the requirements of Section 3142, but also follows the recommendation of the Defendant's very own witness, David Shoeck.

Therefore if Mr. Tirado is unable to post the $10,000 ten (10) percent bond and is unable to comply with the financial condition due to insufficient financial ability, so that such financial condition acts as de facto detention, Mr. Tirado may file the appropriate request to the Court for reconsideration, and Mr. Tirado will be given an opportunity to produce such evidence.

**IT IS SO ORDERED.**